IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NAEEM YAZDANI,** | : | Civ. No. 1:21-CV-1271 |
| | : | |
| **Plaintiff,** | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **HARRISBURG AREA COMMUNITY COLLEGE,** | : | |
| | : | |
| **Defendant.** | : | |

# MEMORANDUM ORDER

This is an employment discrimination suit brought by the plaintiff, Naeem Yazdani, who asserts that the defendant, Harrisburg Area Community College ("HACC") terminated his employment because of his national origin in violation of Title VII of the Civil Rights Act. We held a telephone conference with the parties to address a discovery dispute brought to the Court's attention in the plaintiff's November 24, 2021 correspondence regarding the defendant's intention to serve a third-party subpoena on the plaintiff's current employer. This subpoena requested a broad array of information from the plaintiff's current employer, stating a request for "Any and all documents and records or electronically stored information concerning Naeem Yazdani," and then made several requests for specific documents, including: wage, payroll, and benefits information; performance

1

evaluations; disciplinary records; attendance records; and others. (Doc. 13).

For the plaintiff's part, Yazdani asserts that this records request is overbroad, in that it essentially requests the plaintiff's entire personnel record. The defendant, on the other hand, contends that it is not requesting the plaintiff's entire personnel file, but rather is requesting the specific documents listed in the subpoena, which it contends are relevant to the plaintiff's claims of discrimination.

During the telephone conference to discuss this dispute, we put the parties on notice of the relevant authority that will guide our resolution of this dispute. In Saller v. QVC, Inc., 2016 WL 8716270 (E.D. Pa. June 24, 2016), the court was faced with a discovery dispute almost identical to the dispute in this case. The defendant sought to serve a subpoena to the plaintiff's post-termination employers for whom she worked after leaving QVC. This subpoena requested "[a]ll documents concerning [Plaintiff's] personnel files," as well as documents concerning "[Plaintiff's] job performance; . . . attendance records, payroll records, . . . benefits that [Plaintiff] received . . . . and [a]ll documents concerning [Plaintiff's] termination." Saller, 2016 WL 8716270, at *2. The court concluded that some of these requests were overbroad but ultimately permitted the defendant to serve a more narrowly tailored subpoena for specific categories of documents.

The Saller court first determined that the defendant's request for "[a]ll documents concerning [Plaintiff's] personnel files" was overbroad. Id. at 4. The

2

court noted that "[c]ourts have routinely found blanket requests for a plaintiff's entire personnel or employment file to be impermissibly broad." Id. (collecting cases). Indeed, the court reasoned that the "permissible scope of discovery is broad, [but] it is not limitless." Id. (quoting Jones v. Lyneer Staffing Sols., Inc., 2014 U.S. Dist. LEXIS 21820, at *3 (D.N.J. Mar. 12, 2014). Thus, because the defendant had requested the entire personnel file, the court denied this request and ordered the defendant to modify its subpoena to a more narrowly tailored request. Id.

However, with respect to the specific requests for documents concerning the plaintiff's post-termination employment, the court permitted the defendant to serve subpoenas requesting these documents. On this score, the defendant had requested documents similar to those requested in this case, including "information related to Plaintiff's job performance [], her attendance and compensation records [], her benefits [], and her termination or cessation of work." Id. at 5. The court first found that these requests fell within the general scope of discovery, as these documents were relevant to the plaintiff's mitigation of damages. Id. (finding that payment records, disciplinary and performance records, and benefits records were discoverable). Further, while the plaintiff asserted that such requests would affect her relationship with her post-termination employers, the court found that the plaintiff made only general assertions and did not make a showing that "a clearly defined and serious injury would inure *to her* if her post-termination employers were

3

subpoenaed" for this information. Id. Ultimately, the court permitted the defendant to serve these more narrowly tailored subpoenas on the plaintiff's post-termination employers. Id. at *6.

We find Saller persuasive. At the outset, the plaintiff has conceded that payroll, benefits, and wage information would be relevant to the issue of mitigation in this case. Further, the specific requests made in the defendant's subpoena for "applications for employment, performance evaluations, disciplinary reports, suspension records, attendance records, discharge/termination records, wage and payroll records, promotions . . . records of employee benefits, summary plan descriptions, requests for accommodations, leave documentation, and positions held by Mr. Yazdani," are requests similar to those found to be permissible in Saller. Indeed, as the court noted, these documents may be relevant to the issue of mitigation, and "[s]ince Defendant bears the burden of proving any failure to mitigate, it is entitled to records relevant to that calculation." Saller, 2016 WL 8716270, at *5. Accordingly, the defendant will be permitted to issue a subpoena to the plaintiff's current employer requesting these specific documents.

Finally, we note that the proposed subpoena requests "complaint and investigatory notes." This vague and broad request will not be permitted. First, it is unclear whether the defendant is requesting documents concerning complaints filed *by* the plaintiff or *against* the plaintiff. On this score, to the extent the defendant is

4

requesting copies of complaints filed by the plaintiff, the <u>Saller</u> court rejected a similar request. In <u>Saller</u>, the defendant was seeking production of other complaints the plaintiff had made under the ADA, FMLA, or other complaints of discrimination. <u>Id.</u>, at *5. However, the court denied this request, finding that "Defendant has failed [to] explain how subsequent requests for FMLA or ADA accommodation Plaintiff may have made are relevant to the claims or defenses in this matter, which pertains solely to Plaintiff's allegations against QVC." <u>Id.</u> Given the vagueness of the defendant's request in this case, we similarly fail to see how a request for other complaints the plaintiff may have made to her post-termination employer are relevant to the claims or defenses in this case against HACC.

Thus, persuaded by the <u>Saller</u> court and in accordance with the instructions provided to the parties in the telephone conference, IT IS HEREBY ORDERED THAT the defendant shall modify its subpoena it intends to serve to the plaintiff's current employer, Capgemini, in that the defendant shall be permitted to request the specific documents that may be relevant to the issue of mitigation, including "applications for employment, performance evaluations, disciplinary reports, suspension records, attendance records, discharge/termination records, wage and payroll records, promotions . . . records of employee benefits, summary plan descriptions, requests for accommodations, leave documentation, and positions held by Mr. Yazdani." However, the defendant's request to serve a subpoena seeking

"[a]ny and all documents and records or electronically stored information concerning Naeem Yazdani," as well as any request for "complaints and investigatory reports" is DENIED, as it is impermissibly broad.

SO ORDERED this 30th day of November 2021.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
